# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIKE P. KERRIDGE,

          **Plaintiff,**

-vs-                                **Case No.  6:10-cv-1009-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

          **Defendant.**

_____

# Memorandum Opinion & Order

     The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

     The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

     For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## I.      BACKGROUND

### A.    Procedural History

     Plaintiff filed for a period of disability, DIB and SSI benefits on November 5, 2004, alleging an onset of disability on October 14, 2004, due to vertigo and blackouts.  R. 119, 124-33, 389, 396, 411-13.  His application was denied initially and upon reconsideration.  R. 67-70, 74-77, 403-10.  Plaintiff did not timely file a Request for Hearing.  Therefore, on May 10, 2006, the Plaintiff filed new

initial applications under Title II and Title XVI.  R. 119-121, 396-402.  They were again denied at the initial level and on reconsideration. R. 59-66, 392-395.  Plaintiff timely filed a Request for Hearing (R. 58), and a hearing was held on June 2, 2008 before Philemina M. Jones, Administrative Law Judge (the "ALJ").  R. 445-80.   In a decision dated January 30, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of the decision.  R. 15-26.  Plaintiff timely filed a Request for Review of the ALJ's decision (R. 11), and the Appeals Council denied Plaintiff's request on April 30, 2010. R. 6-9.  Plaintiff filed this action for judicial review on July 2, 2011.  Doc. No. 1.

### B.    Medical History and Findings Summary

At the time of the hearing, Plaintiff was forty-eight years of age, and he had completed one year of college. R. 136, 449-450.  Plaintiff had been employed as a construction worker doing framing and carpentry, a cook, a tree remover, a mechanic, a welder, and a heavy equipment operator.  R. 119, 124, 133, 136, 140, 154-164, 450-453.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of vertigo, blackouts, cardiac problems, headaches, back and neck pain, and carpal tunnel syndrome.  R. 132-33, 455-61.   After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from right carpal tunnel syndrome; sinus bradycardia; degenerative disc disease of the lumbar and cervical spine; herniated nucleus pulposus, status post fusion surgery; status post anterior cervical diskectomy; bilateral sensorineural hearing loss; headaches; and history of vertigo, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 17-18.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with a sit/stand option, no repetitive bending, stooping, or crouching, no work around unprotected heights or with moving machinery;

avoid concentrated exposure to hazards, never climb ropes, ladders, or scaffolds; and occasional climbing ramps and stairs. R. 19. In making this determination, the ALJ found that the evidence as a whole does not substantiate the severity of Plaintiff's allegations regarding his functional limitations that would preclude him from all work-related activity. R. 19-20. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 24. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as surveillance system monitor, fabricator assembler, information clerk. R. 25. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 26.

Plaintiff now asserts five points of error. First, he argues that the ALJ erred by finding he had the RFC to perform a reduced range of sedentary work contrary to treating physicians' statements. Second, he claims the ALJ erred by relying upon the vocational expert (VE) testimony, after failing to inquire whether the testimony conflicted with the Dictionary of Occupational Titles as required by a Social Security Ruling (SSR). Third, Plaintiff contends the ALJ erred by failing to perform a function-by-function analysis of the claimant's work-related abilities as required by the SSR. Fourth, he asserts that the ALJ erred by relying on the testimony of a vocational expert after posing an incomplete hypothetical question by failing to define what was meant by a sit/stand option. Fifth, he argues that the ALJ erred in evaluating his pain and credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f); *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

## III.    ISSUES AND ANALYSIS

### A.    RFC and the treating physicians' opinions

Plaintiff claims that the ALJ erred in finding he had the RFC to perform a reduced range of sedentary work because the ALJ failed to adequately consider the opinions of his treating physicians. The Commissioner contends that the ALJ provided sufficient good cause for discounting these physicians' opinions.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other

consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th

Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ determined that Plaintiff had the RFC to perform sedentary work with limitations of

a sit/stand option, with no repetitive bending, stooping, or crouching, no working at unprotected

heights or with moving machinery, avoiding concentrated exposure to hazards, and no climbing of

ropes, ladders, or scaffolds, and he can occasionally climb ramps and stairs.  R. 19.  Plaintiff argues

that in reaching the RFC opinion, the ALJ did not adequately consider the opinions of several treating

physicians, those of Dr. Behrmann, Dr. Ham-Ying and Dr. Billy Thompson (R. 259, 333, 359, 379),

instead giving them "little weight."  R. 23-24.  Plaintiff argues that the ALJ erred in indicating that

the testing was essentially normal around May 2005, citing notes of Dr. Weinstein that Plaintiff had

positional dizziness with approximately three episodes of actual loss of consciousness; an incomplete

right bundle-branch block; mild glucose intolerance; and mild mitral valve prolapse. R. 288. Plaintiff

posits that Dr. Ham-Ying's opinion that Plaintiff was disabled was based on the objective findings

of an incomplete right bundle-branch block.  The ALJ discounted these physicians' opinions based

on the following:

> As for the opinion evidence, on March 8, 2005, Michael Ham-Ying, M.D., from
> Community Health Centers, opined that the claimant was unable to operate machinery,
> climb, bend, crawl or stoop.  On  May 23, 2005, Dr. Ham-Ying, also stated that the
> claimant was unable to work and recommended food stamps assistance for a duration
> of 12 months.  The opinion of Dr. Ham-Ying in given little weight not only because
> of limited objective evidence of physical impairments to establish this degree of
> disability, but also because the doctor failed to frankly address the paucity of the
> objective evidence compared to the claimant's subjective complaints and self-reported
> symptoms and appeared to be an accommodation at the claimant's request.  Indeed,
> the medical evidence shows that nuclear tests performed around that time were
> essentially normal and gave a history of only two blackouts in 2005.  In addition, at
> that time, the claimant appeared healthy.  Examination demonstrated full range of
> motion of the neck and head. . . . The undersigned notes that Dr. Ham-Ying reported
> that the claimant has cervical radiculopathy, but physical examination indicated
> normal examinations of his extremities. . . .

On February 14, 2007, one month after surgery, Dr. Behrmann recommended no overhead activity or lifting greater than ten pounds, bending, twisting, pushing or pulling. On October 24, 2007, Billy Thompson, M.D., opined that the claimant was unable to work due to degenerative disc disease of the cervical spine with radiculopathy. The undersigned assigned little weight to these opinions in view of the objective medical evidence and laboratory and objective findings. In June 2007, the claimant appeared to be doing well from a spine standpoint. X-rays demonstrated stable alignment with flexion/extension, both cervical and lumbar. The claimant was encouraged to continue with a regular stretching and exercise program and was recommended follow up as needed. In November 2007, the claimant reported that he was prescribed Lyrica for chronic headaches but that he had not started this medication. In February 2008, examination demonstrated only slight diminished grip strength of the right hand with well-healed incision.

R. 23-24 (internal citations omitted).

The Commissioner contends that the ALJ provided sufficient cause for discounting these physicians' opinions, and the opinion on Plaintiff's inability to work is one reserved to the ALJ. The Commissioner argues that Dr. Ham-Ying's March 2005 opinion that Plaintiff was unable to operate machinery, climb, bend, crawl, or stoop (R. 319), written on a prescription pad, did not contain any other information concerning Plaintiff's condition, but appeared to refer him to vocational rehabilitation. R. 319. Two months later, in May 2005, Dr. Ham-Ying stated Plaintiff was unable to work (R. 359), also written on a prescription pad but containing no other information concerning Plaintiff's medical condition, other than a recommendation that Plaintiff receive food stamps for twelve months (R. 359). The Commissioner argues that the ALJ properly accorded Dr. Ham-Ying's opinions little weight because they were not well-supported, were inconsistent with the objective medical evidence, and appeared to be based largely on Plaintiff's subjective complaints. R. 23.

The Commissioner argues that substantial evidence supports the ALJ's RFC finding for a range of sedentary work. The Commissioner contends that the ALJ properly credited the opinion of Dr. Perdomo, the consulting physician who examined Plaintiff in December 2004, two months after his alleged onset date (R. 240) and the opinions from Drs. Hankins and Bigsby, the state agency medical consultants who reviewed Plaintiff's medical records and concluded that he was capable of

performing a range of medium and light work. R. 23 (citing 243-46, 302-06).  However, as the Commissioner concedes, the ALJ did not give full weight to Dr. Perdomo's opinion, concluding that portions of the opinion were "somewhat optimistic" in light of Plaintiff's diagnosis of degenerative disc disease; and the ALJ found that the opinions from Drs. Bigsby and Hankins were reasonably based on the evidence available at the time, but concluded that he was "more limited than originally thought."  R. 23.

On Plaintiff's alleged onset date of October 14, 2004, Plaintiff had an accident at work where he became dizzy, lost consciousness, and fell striking his head.  R. 215, 218-38.  At the time he was discharged from the hospital, it was determined that Plaintiff was suffering from benign positional vertigo. R. 227.  He had a normal brain MRI.  R. 230.  He had no angina or ischemia, and his heart was normal.  R. 233-34.  According to the December 23, 2004 report from Dr. Perdomo, the consulting physician, Plaintiff reported having had syncope three times between October and December 2004.  R. 239.  He reported being unable to work as a metal frame installer because it required working on high-rise buildings.  R. 239.  Dr. Perdomo's impression was "history of positional vertigo," and referral to an ear, nose, throat specialist for further evaluation of possible inner-ear involvement.  R. 240.

Plaintiff contends that in discounting the opinion of Dr. Ham-Ying as "testing was essentially normal around the time of May, 2005" (R. 23), the ALJ erred in failing to note that Dr. Weinstein, a cardiologist at Orlando Heart Center to whom Dr. Ham-Ying referred Plaintiff, had concluded on February 17, 2005, that Plaintiff had positional dizziness with approximately three episodes of actual loss of consciousness; an incomplete right bundle-branch block; mild glucose intolerance; and extremely mild mitral valve prolapse. R. 288.  Plaintiff reported on January 28, 2005 to Dr. Weinstein that he had a history of headaches occurring three to four times daily and took occasional aspirin for these, but denied chest pain.  R. 293.  The recommended CT scan of the chest to rule out pulmonary

embolism as the cause of his symptoms, taken the next day on January 30, 2005, was negative.  R. 292.  The recommended holter electrocardiogram from February 1, 2005 showed Plaintiff was in "sinus rhythm without ectopy" for "the majority of the prolonged period" although he reported chest discomfort from 10:26 a.m. to 7:15 p.m.  R. 290-91.  A repeat echocardiogram performed on February 1, 2005, demonstrated normal left ventricular systolic function and findings of extremely mild posterior mitral valve leaflet prolapse in the absence of aortic insufficiency.  R. 287, 288.  At the office visit on February 17, 2005, when Plaintiff bent over at the waist for approximately 30 to 40 seconds to demonstrate to the doctor the posture that precipitates his symptoms, there was no significant change in his cardiac rhythm and he did not experience loss of consciousness though he reported dizziness.  R. 288.  The most significant of the findings was abnormal electrocardiogram demonstrating incomplete right bundle-branch block and left anterior fascicular block with significant sinus arrhythmia, rule out sick sinus syndrome.  R. 288.  In the same treatment note, Dr. Weinstein reported that Plaintiff's echocardiogram showed normal left ventricular systolic function, extremely mild posterior leaflet mitral valve prolapse, and no evidence of supravalvular, subvalvular, valvular aortic stenosis, or hypertrophic cardiomyapthy, and that both CT and MRI of Plaintiff's brain were normal.  R. 288.

After additional testing, the impression Dr. Weinstein formed after reviewing all of the negative cardiac test results for the prior 60 days was "recurrent dizzy spells of unclear etiology in the absence of dysrhythmia or evidence of neurocardiogenic syncope."  R. 280.

There are no records of Plaintiff receiving any other treatment from the Orlando Heart Center until July 2006 when he returned for surgical clearance because he was planning to have orthopedic neck and back surgery and he continued to have occasional palpitations; Plaintiff was noted as having a history of syncope with negative cardiac workup including tilt table test in 2005 and abnormal EKG, normal sinus rhythm with an incomplete right bundle branch block and left anterior fascicular block.

-9-

R. 274-75.  Dr. Weinstein noted that Plaintiff continued to drink two to five beers per day, which he referred to as "significant alcohol consumption," and he discussed "decreasing his alcohol consumption for his overall general health" which Plaintiff responded he would consider.  R. 274-75. On September 12, 2006, Plaintiff was seen at the Orlando Heart Center, after the orthopedic neck surgery; he described "only rare fleeting chest discomfort";"denied any syncope"; and described having "occasional headaches."  R. 268.  Dr. Weinstein noted that he continued to drink at least four beers daily, which he described as "excess alcohol intake" and Plaintiff was cautioned in regards to his alcohol intake.  R. 268-69.

To the extent Dr. Ham-Ying's opinion was (arguably) based on results of cardiac tests performed under Dr. Weinstein's treatment of Plaintiff, the ALJ's discounting of Dr. Ham-Ying's opinion was based on substantial evidence since the objective evidence indicated there were no or mild cardiac issues and additional treatment was not necessary.

Plaintiff argues that the ALJ also should not have "given little weight" to the opinions of Dr. Behrman, Plaintiff's treating neurosurgeon, and Dr. Thompson, a primary care physician from Pine Hills Family Health Center.  R. 259, 333, 378.  Plaintiff contends that the ALJ's statement, "In June 2007, the claimant appeared to be doing well from a spine standpoint" ignored Plaintiff's significant problems with right hand numbness and moderate median neuropathy and carpal tunnel syndrome. R. 24.

Dr. Behrman's "opinion" was merely a "school/work activity release dated July 19, 2006 which precluded Plaintiff from returning to work "pending surgery" until August 8, 2006, when he had cervical discectomy and fusion with plate fixation.  R. 259, 429.  When Plaintiff had asked Dr. Behrman's office to fill out social security forms in July 31, 2006, the Nurse Practitioner deferred, noting that Plaintiff's disability ("blackouts" and heart rate problems) did not appear to be related to his cervical spine, and Dr. Behrman would only be willing to fill out short term disability forms for

a period of six to twelve weeks after surgery.  R. 340.  The "work release" form from Dr. Behrman

was not intended to be long term opinion of Plaintiff's capacity.

Plaintiff had epidural steroid injections which did not completely relieve his symptoms in his

lower spine (R. 254-57), and he eventually had surgery (an L5 though S1 fusion and L4 through S1

decompressive laminectomy).  R. 333.  Following the fusion surgery on January 31, 2007, Plaintiff

was "doing very well," though he was advised not to do overhead activity, lifting greater than ten

pounds, bending, twisting, pushing, or pulling.  R. 333.  In October 2007, Dr. Thompson, Plaintiff's

primary care physician, stated that Plaintiff was unable to work due to degenerative disc disease of

the spine with radiculopathy.  R. 378.  The ALJ properly disregarded Dr. Thompson's opinion in light

of the opinion that the ALJ quoted from Plaintiff's specialist, Dr. Behrmann, from June 2007's

treatment notes – six months post-surgery – in which he stated that Plaintiff was "doing well from a

spine standpoint," had good range of motion in his neck and back, and had some stiffness but no pain

in his lower back; x-rays of Plaintiff's cervical and lumbar spine showed stable alignment with

extension/flexion.  R. 385.  Dr. Behrmann also recommended an exercise and stretching program and

for Plaintiff to follow up as needed.  R. 385[1].

Plaintiff also argues that the ALJ ignored Plaintiff's complaints of significant problems with

right hand numbness, that an EMG/nerve conduction test confirmed moderate median neuropathy,

and that his symptoms were consistent with carpal tunnel syndrome. R. 384.   The Commissioner

argues that the ALJ did consider February 2008 treatment notes from Dr. Behrmann, in which Dr.

Behrmann noted that, *after* Plaintiff's right carpal tunnel release surgery on October 12, 2007,

Plaintiff's hand was well-healed and he had 4/5 intrinsic strength.  R. 367, 429.  Dr. Behrmann also

---

[1]The Commissioner also argues that the ALJ properly considered the November 2007 treatment note from Dr. Behrmann, in which he reported that Plaintiff had been prescribed medication for headaches but had not started taking it yet (R. 381, 429), as an indication that Plaintiff's noncompliance with prescribed treatment may be used as a factor for discounting allegations of disability.  Records indicate Plaintiff reported not being able to afford Lyrica.  R. 420.

stated that Plaintiff complained of only some muscle spasms in his lower back and denied any radicular pain. R. 429. Because Plaintiff was having headaches, Dr. Behrmann referred him to a neurologist, Dr. Tran. R. 429. On August 8, 2008, Dr. Tran performed auditory testing and ordered vestibulopathy testing which came back normal; a subsequent brain MRI was normal. R. 432, 433. Dr. Tran's impression was the headaches could be migraine-related. R. 433. The ALJ's decision to give "little weight" to Dr. Thompson's opinion regarding Plaintiff's *spine problems* is based on substantial evidence.

Plaintiff also argues that the ALJ erred in not addressing a letter from Vocational Rehabilitation that Plaintiff's condition was too severe, and that he should consider applying for Social Security Disability benefits. R. 131. Plaintiff argues that the letter "could provide valuable insight to the ALJ." The ALJ was not required to address the letter from Vocational Rehabilitation which said *in toto*:

> Dear Mr. Kerridge:
>
> Thank you for promptly attending your appointment today at Vocational Rehabilitation. It has been agreed by both Vocational Rehabilitation and yourself that you cannot be found eligible for services at this time. Due to the severity of your condition, VRS cannot open a case for you at this time. It is suggested that you reapply for food stamps and Social Security benefits as soon as possible.

R. 131.

The letter was written before Plaintiff had his neck and back surgeries in 2006 and 2007 and his carpal tunnel surgery in 2008. Plaintiff concedes that the opinion from Vocational Rehabilitation is not from a medical provider, and, as such, the ALJ is not required to give it any particular weight.

Accordingly, good cause existed for the ALJ's failure to credit the opinions of certain physicians that Plaintiff was disabled and for failure to credit the letter from Vocational Rehabilitation.

### B.      Function-by-function analysis

Plaintiff argues that the ALJ erred in assessing his RFC because she did not provide a function- by-function assessment of Plaintiff's work-related abilities in accordance with SSR 96-8p[2]. The Commissioner contends that the ALJ's RFC finding did constitute a "function by function" analysis and, in any event, failure to include such an analysis would be harmless error because Plaintiff has not shown how he was prejudiced as a result of the ALJ's failure to set forth the specifics of the definition of sedentary work.

Social Security Ruling 96-8p requires that the ALJ consider all the evidence and assess the plaintiff's ability to do work-related activities, including sitting, standing, walking, lifting, carrying, pushing, and pulling. See SSR 96-8p at *3, *5 (1996).  SSR 96-8p states that, at Step 4 of the sequential evaluation, the RFC should not be initially expressed in terms of exertional categories. Id. However, at step 5, the RFC must be expressed in terms of the exertional categories, such as "sedentary," "light," "medium," or "heavy." Id.   The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

The Commissioner argues that the ALJ discussed the medical evidence in accordance with SSR 96-8p and found that Plaintiff could perform the exertional demands of a reduced range of sedentary work (R. 19), and the definition of sedentary work found in the rulings and regulations encompasses these work-related activities. See 20 C.F.R. §§ 404.1567(c), 416.967(c).  In Finding No. 5, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the *residual functional capacity to perform sedentary work as defined in 20 CFR*

---

[2]See http://www.ssa.gov/OP_Home/rulings/di/01/ SSR-96-8p-di-10 html.

-13-

*404.1567(a) and 416.967(a)* except that he requires a sit/stand option, with no repetitive bending, stooping, or crouching, no working at unprotected heights or with moving machinery, avoiding concentrated exposure to hazards, and no climbing or ropes, ladders, or scaffolds, and he can occasionally climb ramps and stairs.

R. 19 (emphasis added).

As the Court has already addressed above, the ALJ's finding that Plaintiff could perform a reduced range of sedentary work based on the medical evidence is based on substantial evidence. The issue raised by Plaintiff is whether Finding No. 5 properly encompassed the function-by-function analysis for sedentary work. The Commissioner argues that the regulations and rulings explain the exertional demands associated with sedentary work and the ALJ's RFC finding sufficiently constituted the "function by function" assessment contemplated by SSR 96-8p. In the case cited by the Commissioner, *Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007), the Eleventh Circuit held that, although the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence in finding that it did not support the level of disability claimed, and only did he find that she could perform light exertional activity. "The ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday [according to] SSR 83-10." *Id.* Similarly in this case, the ALJ specifically referred to the applicable descriptions of sedentary work in the Social Security Regulations rather than setting forth the individual criteria; thus she was aware of those criteria in making Plaintiff's RFC finding. The Social Security Regulations – 20 CFR 404.1567(a) and 416.967(a) – define sedentary work as:

[L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR 404.1567(a) and 416.967(a); *see also* SSR 83-10[3], 1983 WL 31251, at *5 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). Moreover, as noted by the ALJ, Plaintiff's neurosurgeon, Dr. Behrmann, recommended restrictions following Plaintiff's fusion surgery for no overhead activity or lifting greater than ten pounds, and no bending, twisting, pushing or pulling (R. 24, 333) which is not inconsistent with the RFC for a reduced range of sedentary work that the ALJ found. The ALJ also imposed the postural and environmental limitations that the consulting physician and state agency reviewing physicians proposed: no bending, no working at unprotected heights or with moving machinery or driving vehicles. R. 19, 246, 300, 303-05.

The ALJ also accurately described the sedentary exertional level, with additional limitations, in the hypothetical to the VE, by stating that the hypothetical individual was limited it to the sedentary levels on sitting, standing, and walking. R. 469. *Freeman*, 220 Fed. Appx. at 960 (affirming denial of benefits where the ALJ included in the hypothetical to the VE that the individual was limited to "light exertional activity" which included limitations on sitting, standing, and walking and accurately described the claimant's functional capacity). Viewing the ALJ's description of Plaintiff overall, it was accurate and the ALJ's determination of Plaintiff's RFC was based on substantial evidence.

## C.    Vocational Expert testimony

Plaintiff argues that the ALJ erred in relying on VE testimony after failing to inquire whether the testimony conflicted with the Dictionary of Occupational Titles as required by Social Security Ruling 00-4p[4]. The Commissioner argues that the ALJ inquired about apparent conflicts between the

---

[3]*See* http://www.ssa.gov/OP_Home/rulings/di/01/ SSR-83-10-di-10 html.

[4]*See* http://www.ssa.gov/OP_Home/rulings/di/01/ SSR-00-4p-di-10 html.

VE's testimony and the DOT and, therefore, complied with SSR 00-4p.  The ALJ relied on opinion evidence from a vocational expert in concluding that there was other work in the national economy that the claimant could perform.  R. 464-80.  SSR 00-4p requires that occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT and requires an ALJ to inquire about apparent conflicts between the VE's testimony and the information contained in the DOT. *See* SSR 00-4p.

Plaintiff acknowledges that the ALJ said to the VE: "I'm going to ask that if there are any inconsistencies between your testimony and information in the DOT that you make me aware of those inconsistencies," to which the VE responded, "I will."  R. 465. However, Plaintiff contends this was not sufficient on the part of the ALJ's questioning, because later during the hearing the VE admitted that her testimony was not based on the DOT, which does not address sit and stand options.  R. 470. During the hearing, Plaintiff's counsel asked the VE:

> Attorney: Ms. [B]eougher, your assertion that surveillance system monitor and fabricator-assembler are, have a sit-stand option, is that from the DOT?
>
> VE: The DOT doesn't address sit and stand options. Those are in the sedentary category. . . . That's my opinion and I have dealt with some employers who hire people to do that and they, they don't mind whether they sit or stand.

R. 470-71.

Plaintiff argues that because the VE had not informed the ALJ of this "inconsistency" previously, he supposes there were "perhaps there were other inconsistencies not addressed by the vocational expert" and the ALJ erred in failing to "directly inquired whether other inconsistencies existed."  The Commissioner argues that the VE did not identify any inconsistencies during the testimony (R. 463-80), nor did Plaintiff's counsel, thus, the ALJ was not required to question the VE further regarding the possibility of any potential inconsistencies.  The Commissioner argues that Plaintiff's argument evinces a misunderstanding of the VE's testimony which did not indicate an

inconsistency, but simply that her testimony was based on her observations in the field.  R. 470-71.

The Commissioner points to SSR 00-4p which states that evidence from a VE may include information not included in the DOT. See SSR 00-4p, 2000 WL 1898704, *2.  SSR 00-4p anticipates that the DOT may not contain all relevant information, and information about a particular job's requirements may be obtained by the VE from sources other than the DOT, such as reliable publications or the VE's own experience in job placement or career counseling. See 20 C.F.R. § 404.1566(d)(1)-(5); SSR 00-4p, 2000 WL 1898704, *2-3.  Moreover, Plaintiff's argument that other "inconsistencies" existed is no more than supposition.

Plaintiff also argues that the ALJ should not have relied on the testimony from the VE because the ALJ's hypothetical question to the VE was incomplete in that the ALJ failed to define what was meant by a sit/stand option.  The Commissioner argues the ALJ's hypothetical question to the VE was not "incomplete," and the ALJ properly relied on the VE's testimony to find that Plaintiff could perform other work that exists in significant numbers in the national economy.  R. 25.

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Plaintiff argues that in this case there is no indication from the ALJ as to the meaning of "sit/stand option" and the ALJ erred in relying on the hypothetical without knowing the meaning; thus, although the vocational expert was able to identify jobs, there is no way of knowing whether the sit/stand option noted by the ALJ was the same sit/stand option identified by the vocational expert.

The ALJ asked the VE to consider a hypothetical claimant who could perform sedentary work; would require a sit/stand option; should avoid concentrated exposure to hazards, moving machinery, and driving; could occasionally climb ramps and stairs; could not do repetitive bending, stooping, or crouching; and could never climb ropes, ladders, or scaffolds.  R. 469.  The VE responded that Plaintiff could perform the unskilled work of surveillance system monitor, fabricator-assembler, and information clerk.  R. 469, 474.  The VE further testified that over 150,000 of these positions exist in the national economy (R. 469, 474) which represents a significant number of jobs in the national economy, thus, the ALJ properly found Plaintiff was capable of performing other work in the national economy available in significant numbers and was not disabled.

The Commissioner argues that the ALJ properly asked the VE a hypothetical question that included functional limitations consistent with Plaintiff's RFC, including the sit/stand option.  R. 19, 469.  The Court agrees with the Commissioner's position that the plain meaning of the term "sit/stand option" is self-explanatory and requires no further clarification. Even so, as the Commissioner points out, the VE specifically defined the term "sit/stand option" during her testimony, in stating a claimant had a sit/stand option when they could perform a job "sit[ting] down. . . or if they preferred they could stand up."  R. 471.  If the ALJ had any doubt about the meaning, she could have questioned the VE further about it, but she did not.  The ALJ's reliance on the VE's testimony, including her definition of "sit/stand option," in finding that Plaintiff could perform other work available in significant numbers in the national economy was based on substantial evidence.

### D.    Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his pain due to vertigo, blackouts, cardiac problems, headaches, back and neck pain, and carpal tunnel syndrome.  R. 455-61.  He also argues that the ALJ erred by finding his subjective complaints credible only to the extent he is limited to a

reduced range of sedentary work.  He contends that the record demonstrates his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11ᵗʰ Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11ᵗʰ Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11ᵗʰ Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ specifically referred to the Eleventh Circuit's pain standard for evaluating subjective complaints, citing the applicable case law, regulations, and Social Security Ruling ("SSR") 96-7p.  R. 19 (citing *Brown v. Sullivan*, 921 F.2d 1233 (11th Cir. 1991); *Holt*, 921 F.2d at 1223).  The ALJ complied with those standards and determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, but found "[w]hile it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of his impairments, the evidence as a whole does not substantiate such severe functional limitations that would preclude him from all work-related activity as is required under Social Security rules and regulations."  R. 19-20.  Following a discussion of the objective medical evidence and Plaintiff's RFC, the ALJ stated:

Overall, I find the claimant's testimony and subjective statements regarding his pain and limitations credible to the extent of establishing that he has a combination of severe impairments, but not fully credible to the extent of establishing that these impairments are so severe as to preclude him from performing substantial gainful activity as required under Social Security rules and regulations. The claimant testified that he has not worked since October 14, 2004, his alleged onset date of disability. However, on July 19, 2006, one month before his neck surgery, Dr. Behrmann gave the claimant a work activity release form (Ex. 8F).  Also on December 20, 2006, the claimant was seen at the Centers for completion of a work form (Ex. 13F/1), suggesting that the claimant was doing some type of work activity.

The claimant also testified that he is half deaf in his left ear.  However, the medical evidence fails to show that the claimant has been fitted with a hearing aide to improve his hearing.  During the hearing, the claimant was able to communicate without any apparent difficulty.  The claimant also testified that he experiences back problems.  He testified that he underwent two surgeries and that he continues to experience pain and burning in his lower extremities.  However, a progress note dated June 20, 2007, shows that the claimant was doing well from a spine standpoint.  X-rays demonstrated stable alignment with flexion/extension, both cervical and lumbar.  The claimant was encouraged to continue with a regular stretching and exercise program and was recommended follow up as needed (Ex. 21/5).

The claimant also testified that he underwent carpal tunnel surgery in the right hand last year, but that he still continues to experience numbness of the right hand.  He testified that he was unable to write due to cramps and numbness.  The claimant also testified that he experiences lack of coordination in his right hand and that he drops things.   A follow up note dated November 21, 2007, shows that the claimant complained of only intermittent aching and pain in his third and fourth fingers, but that there was no other paresthesias noted, and motor function was normal.

The claimant also testified that he experiences dizziness and vertigo.  However, the medical evidence fails to show that the claimant's blackout episodes have reoccurred since October 2004.  He testified that he does not cook, clean, mop or dust.  However, he is able to take care of his personal needs, watch television and read.  he testified that he gets headaches daily.  The claimant estimates that he is able to sit for 15 minutes, and stand for 7-8 minutes.  The claimant testified that he cannot bend and needs to sit down to dress.  In July 2008, a head shake test was negative.  There was no evidence of dysmetria. There was no pedal edema of the extremities. The claimant appeared grossly neurologically intact.  Vestibular testing failed to show evidence of central or peripheral vestibular pathology.  MRA of the carotid arteries as well as MR angiogram of the arteries at circle of Willis were essentially normal (Ex. 24F).  Accordingly, I find a claimant's stated symptoms somewhat exaggerated over [what] would be expected based on the medical findings in the record (SSR 96-7p).

R. 22-23.

Plaintiff contends that the record supports his testimony regarding the severity of his impairments, and it is apparent that he suffers from chronic, significant limitations. Plaintiff points to his many doctors' visits, use of medications and diagnostic tests such as MRIs, and that he underwent three separate surgeries during the time at issue, and the fact that no treating physicians indicated that he should not be experiencing the limitations or that he was exaggerating them. Doc. 14.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the ALJ should not have discounted Plaintiff's credibility because, as the ALJ describes it, "Dr. Behrmann gave the claimant a work release form on July 19, 2006 and on December 20, 2006, the claimant was seen at the [Community Health] Center for completion of a work form, suggesting that the claimant was doing some type of work." R. 22. Plaintiff argues that the record does not otherwise show he was working in July or December 2006, and the Center's medical note does not even indicate what was written in the work form, only that the doctor was asked to sign one. R. 309.

Plaintiff clearly misses the ALJ's point in arguing, "For all we know, it indicated that he could not work. Also, the form from Dr. Behrmann notes that Mr. Kerridge cannot return to work pending surgery." Doc. 14. In the context of the overall decision, it is clear that the ALJ cites the doctors' references in their notes to "work forms" as evidence that Plaintiff was working (perhaps not

documented within Social Security records) and required the doctors' forms to excuse his absence – in direct contravention of his hearing testimony that he had not worked at all since 2004.  R. 452.

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints of pain, which included inconsistencies between Plaintiff's reports and the examination findings, as well as inconsistencies with his statements.  These are factors the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.  The ALJ's stated reasons for discounting Plaintiff's testimony are supported by substantial evidence.

## IV.  CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 22, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record